Yunchao Song (SBN 323484)
Juris Path Law Firm PC
17800 Castleton Street, Suite 316
City of Industry, CA 91748
Telephone: (626) 391-4015
Facsimile: (626) 604-0123
*paul.song@jpjplaw.com*

Attorneys for Petitioner Shu Wang

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

SHU WANG, an individual;

Petitioner,

v.

Warden of Desert View Facility; THOMAS GILES, Director of Los Angeles ICE Field Office, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; TODD BLANCHE, Attorney General of the United States; MARKWAYNE MULLIN, Secretary of Homeland Security, in their official capacities,

Respondents.

**Case No.**

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

## INTRODUCTION

1. Petitioner Shu Wang ("Mr. Wang" or "Petitioner") (A-Number: 226-162-710), by and through undersigned counsel, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is a native and citizen of the People's Republic of China presently detained at the Desert View Facility, Adelanto,

California. Petitioner, by and through his undersigned counsel, hereby files this petition for writ of habeas corpus to compel his immediate release from immigration detention after he was re-detained, without first being provided a due process hearing to determine whether his detention was justified. Petitioner was previously released by DHS in February 2025, after a determination that he was neither a flight risk nor a danger to the community.

2. The Due Process clause of the Fifth Amendment requires the government to provide noncitizens with notice and a hearing prior to re-detention. Here, Petitioner's rights were violated when he was re-detained without such process.

## CUSTODY

3. Petitioner is currently in Respondents' physical custody. Petitioner is detained at the Desert View Facility, Adelanto, California. He is under Respondents' and their agents' direct control. Prior to his re-detention, Petitioner was not provided with a constitutionally compliant pre-deprivation hearing.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 2241, Article I, Section 9, Clause 2 of the United States Constitution (the "Suspension Clause"); and 28 U.S.C. § 1331, as Petitioner is presently in custody under the color of the authority of the United States, and such custody violates the Constitution, law, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. § 2241.

5. Venue lies in the Central District of California, the judicial district in which Petitioner is currently detained. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

6. Petitioner is a citizen of China who has resided in the United States since January 2025, when Petitioner entered without inspection, was apprehended by immigration authorities, and was later released from custody. Petitioner was re-detained on December 22, 2025, and has remained detained ever since.

7. The Warden of Desert View Facility is sued in his/her official capacity. He/She has immediate physical custody of Petitioner under the facility's contract with ICE to detain noncitizens. The Warden is a legal custodian of Petitioner.

8. Respondent THOMAS GILES is sued in his official capacity as Director of Enforcement and Removal Operations of ICE's Los Angeles Field Office. Respondent GILES is a legal custodian of Petitioner and has the authority to release him.

9. Respondent DAVID VENTURELLA is sued in his official capacity as Acting Director of ICE. In this capacity, Respondent VENTURELLA directs and oversees ICE's Enforcement and Removal Operations, the component agency responsible for Petitioner's detention. Respondent VENTURELLA is a legal

custodian of Petitioner and has the authority to release him.

10. Respondent TODD BLANCHE is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice ("DOJ"). In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals. Respondent BLANCHE is a legal custodian of Petitioner.

11. Respondent MARKWAYNE MULLIN is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Respondent MULLIN is responsible for the implementation and enforcement of the INA and oversees ICE, the component agency responsible for Petitioner's detention. Respondent MULLIN is a legal custodian of Petitioner.

## **LEGAL FRAMEWORK**

12. The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

13. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

14. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before [he] is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon v. Burch*, 494 U.S. at 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty . . . .").

15. Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59-61 (1993) ("We tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency."

(internal quotations omitted)).

## STATEMENT OF FACTS

16. Petitioner entered the United States on or about January 29, 2025, without inspection and was apprehended by Immigration and Customs Enforcement ("ICE").

17. On or around February 2, 2025, the Department of Homeland Security issued Petitioner a Notice to Appear, charging Petitioner with removability under the Immigration and Nationality Act § 212(a)(6)(A)(i) as an alien present without admission or parole, and placing Petitioner in full removal proceedings before an Immigration Judge.

18. On or about February 4, 2025, ICE released Petitioner from custody and required him to report to ICE regularly.

19. Following his release, Petitioner filed an application for asylum. On October 6, 2026, an Immigration Judge denied relief and ordered Petitioner removed. Petitioner intends to appeal that decision to the Board of Immigration Appeals ("BIA"), and his appeal is due by November 6, 2026.

20. After his release, Petitioner lived openly and peacefully in the community with his wife and their two daughters. He worked to support his family, paid taxes, and attended church regularly. He reported to ICE as required. ICE initially required Petitioner to wear an ankle monitor but removed it in 2025, and he was not wearing one at the time of his re-detention. Petitioner has no criminal history.

21. On or about December 20, 2025, ICE instructed Petitioner to report to the ICE office. On December 22, 2025, Petitioner appeared as instructed, and ICE officers arrested him.

22. At the time of his arrest, ICE officers told Petitioner that he was being taken into custody because he had missed a scheduled home visit on December 2, 2025. Petitioner was at home that day, and no one came to his residence or called him.

23. At no time prior to his re-detention was Petitioner notified that his release had been revoked or that he would be re-detained. He was not given any advance notice that he would be taken into custody, nor was he provided with a bond hearing or any opportunity to contest his detention beforehand. Additionally, when officers detained him, they did not present or show him any warrant authorizing his detention.

24. When Petitioner was taken into custody, ICE took Petitioner's personal belongings, including his Employment Authorization Document (EAD) and driver's license.

25. Petitioner has remained in ICE custody at the Desert View Facility in Adelanto, California, since December 22, 2025, more than nine months.

26. Before his detention, Petitioner was diagnosed with hepatitis B, a viral infection of the liver.

27. Petitioner's condition has worsened in detention. For months, he has

suffered persistent pain in the area of his liver and recurring fevers. He informed facility medical staff of his condition and requested medical care. Yet in more than nine months, the facility has provided only basic medication and has never scheduled him to see a specialist.

28. Petitioner's mental health has also deteriorated in custody. For months, his appetite and activity level have declined. In September 2026, a facility mental health clinician diagnosed him with depression. Petitioner was told that he will not be able to see a provider with authority to prescribe medication until approximately mid-November 2026.

**COUNT ONE**

**(Violation of the Fifth Amendment Due Process Clause)**

29. Petitioner repeats and incorporates by reference the allegations set forth above.

30. Petitioner's detention violated the Due Process Clause. Petitioner possesses a protected liberty interest, and by revoking his release and re-detaining him without providing advance notice, a pre-deprivation hearing, or any meaningful opportunity to contest the alleged basis for the detention, ICE disregarded the procedural safeguards required under the Clause to ensure that the deprivation of Petitioner's protected liberty interest accords with the Constitution. *See Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596 (E.D. Cal. July 14, 2025); *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

31. A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Petitioner was previously released from custody. After his release, Petitioner made good-faith efforts to comply with his reporting requirements and was never informed that his release had been revoked. Petitioner therefore has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

32. Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. 319, 335 (1976).

33. The first *Mathews* factor strongly favors Petitioner. "Freedom from

imprisonment, from government custody, detention, or other forms of physical restraint, lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Federal district courts in California, including this Court, have repeatedly found that noncitizens, like Petitioner, who were previously detained, issued a Notice to Appear, found to be neither a flight risk nor a danger to the community, and released from custody, "therefore maintain a 'protected liberty interest in remaining out of custody.'" *Zhibin Xie v. Larose*, No. 3:25-cv-03649-RBM-MSB, 2026 WL 92066 (S.D. Cal. Jan. 13, 2026) (citing *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025)); *see also Shan Yan v. Fereti Semaia*, 5:26-cv-00674-KK-DSRx (C.D. Cal. Feb. 18, 2026).

34. The second *Mathews* factor also strongly favors Petitioner. There is a "significant risk that the government will erroneously deprive [Petitioner] of [her] liberty interest where, as here, Petitioner was re-detained without advance notice or any pre-deprivation bond or custody hearing." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025) (citing *Singh v. Andrews*, No. 1:25-CV-00801, 2025 U.S. Dist. LEXIS 132500, 2025 WL 1918679 (E.D. Cal. July 11, 2025)). Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690 (citation omitted). Petitioner was released by immigration authorities after his initial detention at the border. By releasing Petitioner, immigration officers necessarily determined that he is neither a flight risk

nor a danger to the community. *See Zapata v. Kaiser*, 801 F. Supp. 3d 919, 938 (N.D. Cal. 2025). Nothing in the ten months that followed undermined that determination. Petitioner has no criminal history. He has never been arrested, charged, or convicted of any offense, in the United States or elsewhere, and there is no allegation that he poses any danger to anyone. Nor is there any indication that he intended to flee. He lived openly with his wife and two daughters, worked, paid taxes, and when ICE instructed him to report to its office in December 2025, he appeared as directed and was arrested there. Respondents re-detained him anyway, without advance notice and without any opportunity to be heard, including on whether he had in fact missed the single home visit on which ICE relied.

35. The third *Mathews* factor likewise favors Petitioner. The government's interest in re-detaining Petitioner without a pre-detention hearing is low "because ICE previously made the determination to release [him], and there is no evidence in the record of any changed circumstances that might cause ICE to reconsider its release determination." *Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215 (N.D. Cal. Sep. 5, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Moreover, such procedural safeguards, including a hearing before a neutral decision-maker, are "one of the most basic due process protections" and would place a "de minimis . . . burden on the government," especially in light of the potential costs to the public by keeping Petitioner detained. *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), abrogated on other grounds by *Fernandez-*

*Vargas v. Gonzales*, 548 U.S. 30 (2006).

36. *Mathews* factors show that Petitioner was entitled to a pre-deprivation hearing before being re-detained. At such a hearing, the government bears the burden to prove that he is a flight risk or danger to the community by clear and convincing evidence. *See Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 2935630 (N.D. Cal. Oct. 15, 2025); *see also Ramirez-Serna v. Mullin*, No. 5:26-cv-02384-DTB, 2026 WL 1514337 (C.D. Cal. May 28, 2026) ("Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community"); *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG, 2025 WL 2381464 (E.D. Cal. Aug. 15, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

37. Respondents provided Petitioner with neither a pre-deprivation hearing nor any constitutionally sufficient justification for dispensing with one, and they have offered no evidence supporting the necessity of a post-deprivation hearing. Therefore, Respondents' summary revocation of the Petitioner's release without an opportunity to be heard deprived him of his due process rights. *Faizyan v. Casey*, Case No.: 3:25-cv-02884-RBM-JLB, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025)

(holding that "due process required the petitioner to be released from custody and receive a bond hearing before an immigration judge before he can be re-detained.")

38. Courts confronting materially similar due process violations have consistently held that immediate release, rather than a delayed post-deprivation hearing, is the appropriate remedy because it restores the *status quo* ante that existed before Respondents violated a noncitizen's constitutional rights. *Ganbat Ayurzana v. Todd Lyons*, No. 5:26-cv-02238-KES (C.D. Cal. May 13, 2026).

39. Moreover, "allowing the government to cure such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless." *Ganbat Ayurzana v. Todd Lyons*, No. 5:26-cv-02238-KES (C.D. Cal. May 13, 2026); *see also Gudavasov v. Marin*, No. 26-cv-00541-AH-MBK, 2026 WL 712827 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); *see also Eduardo Marquez Ibarra v. Kristi Noem*, No. 5:26-cv-01007-MEMF-MAA (C.D. Cal. Mar. 20, 2026); *Reyes Servin v. Semaia*, No. 5:26-cv-02745-MAR, 2026 U.S. Dist. LEXIS 130761 (C.D. Cal. June 4, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 U.S. Dist. LEXIS 141808 (E.D. Cal. June 25, 2026) ("When pre-deprivation process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect").

40. Accordingly, Petitioner is entitled to immediate remedial release rather than a belated bond hearing.

**COUNT TWO**

**(Unlawful Detention Under 8 U.S.C. § 1226(a))**

41. Petitioner repeats and incorporates by reference the allegations set forth above.

42. 8 U.S.C. § 1226(a) applies to noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." Under § 1226(a), detention is discretionary, and individuals may be released on bond or conditional parole as approved by the Attorney General.

43. Under § 1226(a), a noncitizen may be arrested only on a warrant and would be entitled to a bond hearing before an immigration judge and must be released if the noncitizen "does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017).

44. This statutory framework applies to Petitioner. Petitioner was previously released by ICE in February 2025. Since that time, he has resided in the United States for approximately ten months and was already within the United States when he was re-detained by ICE in December 2025. Although an Immigration Judge ordered Petitioner removed on October 6, 2026, that order is not administratively final. 8 C.F.R. § 1241.1(a), (c). Petitioner's detention therefore remains governed by 8 U.S.C. § 1226(a), not by the post-order detention provisions of 8 U.S.C. § 1231.

45. When the ICE agents detained Petitioner, he was not presented with any

warrant authorizing the detention as required under § 1226(a). In addition, at no time prior to his re-detention was Petitioner notified that his prior release was revoked.

46. By detaining Petitioner without providing a warrant, Respondents have acted in excess of their statutory authority under 8 U.S.C. § 1226(a). *See Mumaev*, 2026 U.S. Dist. LEXIS 40377 (finding that respondents failed to comply with § 1226(a) where the petitioner was taken into custody at a check-in without being arrested pursuant to a warrant). As a result, Petitioner's continued detention violates the Immigration and Nationality Act and is unlawful.

47. Therefore, Petitioner respectfully requests that this Court order his release from detention under 8 U.S.C. § 1226(a).

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests that this Court grant the following relief:

1. Assume jurisdiction over this matter;
2. Issue the writ of habeas corpus and order Respondents to show cause within three days why the requested relief should not be granted;
3. Enjoin Respondents from transferring Petitioner from the jurisdiction of this District pending these proceedings;
4. Declare that Respondents' detention of Petitioner violates the INA and the Due Process Clause of the Fifth Amendment;
5. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner

immediately without the imposition of any conditions more restrictive than those previously in place;

6. Order Respondents to return all of Petitioner's personal belongings, including his Employment Authorization Document (EAD) and driver's license;

7. Upon release, prohibit Respondents from imposing conditions of supervision more restrictive than those previously in place, including the imposition of electronic monitoring, absent a hearing consistent with due process;

8. Enjoin Respondents from transferring, re-arresting, or re-detaining Petitioner absent lawful process, including a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that detention is appropriate to prevent his flight or to protect the public;

9. Require Respondents, should they choose to conduct such a hearing, to provide Petitioner with reasonable advance notice of the time and place of the hearing;

10. Enjoin Petitioner's removal from the United States pending a final decision on this habeas action;

11. Enjoin Petitioner's removal from the United States without meaningful notice and opportunity to fully present a fear-based claim;

12. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act and any other applicable authority;

13. Grant further relief as the Court finds just and proper.

Dated: October 5, 2026

Juris Path Law Firm, PC

*/s/Yunchao Song*

Yunchao Song, Esq.
Attorneys for Petitioner Shu Wang